**Nick ALEXANDER et al., Petitioners,**

v.

**The CITY OF SAN ANTONIO, Respondent.**

No. B–2425.

Supreme Court of Texas.

June 23, 1971.

W. W. Palmer and Jewell D. Lemons, San Antonio, for petitioners.

Howard C. Walker, City Atty., Edgar A. Pfeil and Raymond W. Weber, Asst. City Attys., San Antonio, for respondent.

CALVERT, Chief Justice.

This suit grew out of a condemnation proceeding in which City of San Antonio condemned an easement over the southeast

triangular portion of Lot 12, Block 2, Mont Calm Addition to the City of San Antonio, containing 3,808 square feet, for use in a drainage project. The lot was owned at the time by Nick Alexander and his wife, Josephine Alexander. Mr. Alexander died during pendency of the suit and the litigation has been continued by Mrs. Alexander for herself individually and as independent executrix of Mr. Alexander's will and estate.

The Special Commissioners assessed the Alexanders' damages at $210.00. They appealed to the County Civil Court at Law of Bexar County and withdrew the $210.00 which had been deposited with the clerk by City on January 20, 1965. Trial was to a jury which found in response to special issues that the cash market value of the land taken on January 20, 1965 was $2,400.00 and that by virtue of the taking the value of the remainder of the lot was diminished by $2,000.00. Judgment was accordingly rendered awarding City the easement sought and awarding Mrs. Alexander a judgment for $5,406.36, that sum representing the amount of the jury verdict of $4,-400.00, less the $210.00 which had been deposited with the Clerk and was withdrawn, plus $1,216.36 interest. City appealed to the court of civil appeals at San Antonio. The case was transferred by this court to the Beaumont Court of Civil Appeals in an equalization order. That court reversed the trial court's judgment and remanded the cause to the trial court for retrial. Tex.Civ.App., 459 S.W.2d 487. We reverse the judgment of the court of civil appeals and remand the cause to that court for further consideration.

The court of civil appeals sustained City's points of error complaining of trial court action in overruling certain of City's special exceptions to the Alexander pleading and in admitting evidence claimed by City to have been inadmissible and prejudicial. The special exceptions were directed at the Alexander pleadings wherein it was alleged that a "taking" of the property had occurred in early 1961 by virtue of conduct of City, while erecting drainage structures in the street, in entering upon the property and digging a ditch and thereby creating a gully and general erosion. The evidence objected to included photographs, both motion and still, showing the condition of the property condemned before the 1961 drainage improvements were made and its condition thereafter up to January 20, 1965. The court of civil appeals was of the opinion that the effect of overruling the special exceptions and letting in the evidence was to permit the Alexanders to recover damages in this eminent domain suit for the earlier tortious trespass, which action was held by the court to be erroneous under a decision by the Waco Court of Civil Appeals in McLennan County v. Umberson, 358 S.W.2d 228 (Tex.Civ.App.—Waco 1962, writ ref'd n. r. e.). The court sought to distinguish Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642 (1956), and State v. Lasiter, 352 S.W.2d 915 (Tex.Civ.App.—Waco 1961, writ dism'd). Mrs. Alexander contends that the question is ruled by Glade v. Dietert and State v. Lasiter. Although there is language in *Umberson* which appears to place that decision in conflict to some extent with the latter two cases, analysis reveals no conflict.

In Glade v. Dietert, we held that damages flowing from a prior trespass on land could be recovered in a suit to condemn the land on which the trespass occurred. In that case a contractor for the City of Fort Worth entered upon land owned by Dietert and cut down trees. The city later instituted proceedings to condemn an easement over the strip of land from which the trees were cut. We said:

"* * * [T]he law should not be so strictly construed as to preclude respondents [Dieterts] from recovery in the county court, in the case now pending on appeal from the award of the commissioners [the condemnation case], of all damages to which they may be entitled, including the diminishment of the land value caused by removal of the trees." 295 S.W.2d 646.

In speaking of "diminishment of the land value" we had reference to diminished value of the tract being taken and not to diminution in value of the remainder not taken.

In State v. Lasiter, the City of Groves constructed a sewer line across property of Lasiter at the instance of the State Highway Department without any legal right to do so. Some six months later, the State took an easement over the property for highway purposes in a condemnation proceeding. On trial of the condemnation case, the court suppressed all evidence of the existence of the sewer line across the property condemned. The State contended on appeal that the trial court erred in suppressing the evidence because the existence of the sewer line at the time of the taking diminished the value of the land taken and was for that reason admissible. The court of civil appeals sustained the trial court's ruling, holding that the state could not profit from its own wrong. In support of its decision, the court cited and relied upon Texas Western Ry. Co. v. Cave, 80 Tex. 137, 15 S.W. 786 (1891), and San Antonio & A. P. Ry. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040 (1891). The effect of the Lasiter decision was to permit recovery of prior trespass damages in the condemnation proceeding; the land taken was valued just as though there had been no trespass.

The court of civil appeals assumed in the principal part of its opinion in *Umberson* that McLennan County had rebuilt a county road in such fashion as to damage 50 acres of Umberson's land through interference with the natural flow of surface waters causing erosion and standing water. The county sought to condemn 1,464 square feet of the injured land for a highway easement. A jury awarded the owner $6.72 as the value of the land taken and $3,112.00 as damages to the remainder of the land not taken. Only the damages to the remainder were attacked on appeal. Citing a number of cases and art. 3265, subd. 1, Vernon's Texas Civil Statutes, and

distinguishing Glade v. Dietert, supra, the court held that damages to the remainder resulting from the prior trespass were not recoverable in the condemnation suit.

From the three cases analyzed we can safely draw these general conclusions: (1) Evidence of injuries to land resulting from a trespass should be admitted and considered in condemnation proceedings in arriving at market value when the injured land or a part thereof is subsequently being taken by the trespasser as condemnor. (2) Whether the injuries referred to in (1) are caused by an unlawful entry of a person upon the land is irrelevant; the rule is the same whether there is an unlawful entry and direct injury or merely an unlawful invasion resulting from acts and conduct on the trespasser's own property. (3) Evidence of injuries resulting from a trespass should not be considered in condemnation proceedings in arriving at damages to be awarded for diminution in value of the remainder of a tract of land resulting from the taking of a part of the tract. Art. 3265, subd. 1, Vernon's Texas Civil Statutes, limits damages to be awarded for diminution in value of the remainder to those which accrue "by reason of the condemnation of the property, and its employment for the purpose for which it is to be condemned."

When the foregoing rules are applied in resolving the question presented by the ruling of the court of civil appeals in this case, it is apparent that the trial court did not err in overruling City's special exceptions or in admitting evidence of the condition of the triangular tract before City trespassed thereon in 1961 and before the taking in condemnation in 1965; and it matters not whether the ditching and erosion on the tract resulted from an unlawful entry upon the land or from negligence of City in the construction of drainage structures in a city street. City cannot be permitted to profit from its own wrong when it seeks in a condemnation proceeding to pay only the value of a badly ditched and

eroded tract of land made so by its own trespass. The fact that the evidence may also have affected the jury's answers to the issues on damages to the remainder of the Alexander lot cannot be ground for reversal of the trial court's judgment absent a request by City for an instruction to the jury that the evidence was admitted for a limited purpose. Shumard v. Johnson, 66 Tex. 70, 17 S.W. 398 (1886); Blum Milling Co. v. Moore—Seaver Grain Co., 277 S.W. 78 (Tex.Com.App.1925, judgmt adopted).

While the factual situation in this case is the reverse of that in Texas Western Ry. Co. v. Cave, 80 Tex. 137, 15 S.W. 786 (1891) and San Antonio & A. P. Ry. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040 (1891), the principle is the same. In those cases the Railroad-condemnors which had put down their tracks as trespassers and sought to limit recovery by condemnees to the value of their land at the time of the trespass rather than at an appreciated value at the time of condemnation were not permitted to do so. In *Cave*, we said that "[t]he law offers no such rewards for wrong-doing." And we have heretofore established in Glade v. Dietert, supra, that the landowner is not to be forced into two trials, one for damages for trespass and another in condemnation in order to obtain full redress in fact situations like the one before us. In such cases the usual special issue on the value of the tract condemned should include a modifying phrase such as "considered as severed land and as though there had been no prior injury or damage thereto, if any, by the condemnor."

City had a number of other points of error before the court of civil appeals, including points not within our jurisdiction asserting that the evidence is insufficient to support the jury's answers to the three issues, that such answers are against the great weight and preponderance of the evidence, and that the damages awarded by the jury are excessive. Accordingly, we must remand the cause to the court of civil appeals for further consideration.

The judgment of the court of civil appeals is reversed and the cause is remanded to that court.