**FOSTER et al. v. CITY OF LONGVIEW et al.**
No. 1267—5328.

Commission of Appeals of Texas, Section A.
April 23, 1930.

T. W. Davidson, of Dallas, Davidson, Blalock & Blalock, of Marshall, and W. C. Hurst, of Longview, for plaintiffs in error.

Ras Young, Young & Stinchcomb and Edwin Lacy, all of Longview, and John W. Goodwin and L. C. Sutton, both of Austin, for defendants in error.

HARVEY, P. J.

This case is before us on writ of error. We adopt the statement of the case as made in the opinion of the Court of Civil Appeals, which is as follows:

"In January, 1926, the Commercial Guaranty State Bank of Longview was selected as the legal depository for the city of Longview. The same bank had been such depository the preceding year. At the time the selection was made in 1926, the city had on deposit with the bank the sum of $41,404.71. In the effort to qualify for depository in 1926, the

president of the bank had an agreement with the city manager of Longview and a committee of city officials that, instead of executing a bond with personal security as required by the statute, the bank might pledge government bonds and United States Treasury notes to the amount of $24,400 as security for the city's deposits. It was agreed that those bonds and notes should be placed in the hands of the Federal Reserve Bank of Dallas, Tex., and by it held in trust for the benefit of the city of Longview. Some time later the Federal Reserve Bank declined to longer act as such trustee, and by consent of all parties the securities were transferred to the American Exchange National Bank of Dallas, who agreed to hold them as trustee for the same purpose for which they were originally deposited with the Federal Reserve Bank. On account of a reduction in the amount of the city's deposits at that time it was agreed that the amount of securities to be held in trust should be reduced to $22,500. Thereafter United States bonds and treasury notes payable to bearer were held by the American Exchange National Bank of Dallas, in accordance with the agreement above stated. On September 29, 1926, the Commercial Guaranty State Bank failed, and its affairs passed into the hands of the banking commissioner for liquidation. At the time the bank closed its doors, it owed the city for deposits the sum of $30,184.57. This suit was later filed by the city of Longview against the bank, the banking commissioner, and the American Exchange National Bank, to establish a claim against the assets of the Longview bank in the hands of the banking commissioner, and to foreclose a lien on the bonds and treasury notes held by the Dallas bank.

"The city pleaded in the alternative that, if the bonds and treasury notes were not subject to the lien asserted, it have judgment establishing its debt as a preferred claim against the assets of the Longview bank, then in the hands of the banking commissioner. As the basis for the preferred claim, the city alleged that the Longview bank had perpetrated a fraud in securing the contract for the city's deposits while the bank was insolvent. In still another count the city alleged, in substance, that, if the designation of the Commercial Guaranty State Bank as city depository was unlawful because the bank could not qualify as city depository by pledging the bonds and treasury notes, then that the funds of the city placed in the bank constituted a trust fund, and for that reason the city was entitled to a preferential payment out of the assets of the bank.

"The answer of the American Exchange National Bank, so far as material, alleged, in substance, that it held the bonds as a mere trustee, or stakeholder, and expressed a will-

ingness to deliver them to the party to whom the court might award them in the trial of the case.

"The other defendants answered by general demurrer and general denial, and specially pleaded that J. R. Sparkman, the president of the Longview bank, was not authorized to pledge the bonds as security for the city deposits, and that Bothwell, city manager for the city of Longview, was not authorized by the city to accept them as such security. They further alleged that the Commercial Guaranty State Bank did not have the power to secure deposits in that manner, and that the contract pledging its assets was contrary to public policy and void.

"H. L. Foster and sixteen other parties intervened in the suit, each filing a separate petition, claiming certain designated bonds and treasury notes among those pledged by the bank to the city. They alleged that they had left those instruments with the bank for safe-keeping only, and that neither the bank nor Sparkman had any authority to sell or mortgage them for any purpose.

"The city of Longview filed a supplemental petition, pleading estoppel against the interveners and other facts necessary to present the issues hereinafter discussed.

"The case was tried before the court without a jury, and findings of fact and conclusions of law were filed at the request of the parties. In addition to the facts previously stated, the court found that the interveners were the legal owners of $17,500 worth of the bonds pledged by Sparkman to the city; that those bonds had been left with the Commercial Guaranty State Bank for safe-keeping only, and that the use made of them by Sparkman was unauthorized. He further found that the officials of the city of Longview who contracted for the security were deceived by the false representations of Sparkman as to the ownership of the bonds, and were thereby induced to accept the bonds as security for the city deposits; that, had they known that the bonds were not the property of the bank, they would have withdrawn the city funds and would have selected another depository.

"In the final adjudication the court awarded the bonds to the interveners. He also entered a judgment in favor of the city of Longview against the banking commissioner for the amount of money due the city at the time the bank failed. That judgment was made a preferred claim against the assets of the bank in the hands of the commissioner. The court also allowed an attorney's fee of $250 in favor of Coke & Coke, who represented the American Exchange National Bank in the trial of the case."

The Court of Civil Appeals rendered judgment establishing the city's debt as a general claim; having reversed the portion of the trial court's judgment which established the debt as a preferred claim. The Court of Civil Appeals also reversed that portion of the trial court's judgment which is in favor of the interveners for the recovery of the bonds claimed by them, and rendered judgment foreclosing the lien of the city on all bonds which were pledged by the bank as security for the city deposits. 11 S.W.(2d) 217.

■ The bonds in controversy are negotiable instruments, and, at the time the pledge contract between the city and the bank was made, the city had no notice of the bank's lack of ownership of the bonds. To all intents and purposes, the bank, so far as the city is concerned, must be treated as the owner of he bonds at the time they were pledged. The city, therefore, is entitled to a foreclosure of its alleged lien on the bonds, unless a pledge of the assets of a bank to secure a depositor, in the absence of specific statutory authority, be contrary to public policy. For, if such a pledge be contrary to public policy, the pledge contract between the city of Longview and the bank is illegal, and therefore void.

■ On the question of the pledge of a bank's assets to secure a depositor being contrary to public policy, unless specifically authorized by statute, the courts of other states are not in accord. The basic reasoning upon which the negative view is maintained by courts holding to that view is to the effect that, inasmuch as any bank has the implied power to pledge its assets to secure a creditor, and inasmuch as a depositor is regarded in law as a creditor of the bank, a pledge of the bank's assets to secure a depositor is neither ultra vires nor illegal. Although we readily concede that a depositor is regarded in law as a creditor of the bank, and in some respects is to be treated as being on the same plane with an ordinary creditor, we do not concede that the relation of a depositor to the bank is in all respects the same as that of an ordinary creditor. Depositors constitute the main source from which any bank must receive the funds necessary to carry on its business. Authority in the bank to borrow money furnishes means through which auxiliary sources may be tapped, as occasion requires; but, after all, the bank must have depositors in order to live. This well-recognized truth underlies all statutes, such as guaranty fund and guaranty bond statutes, which provide extraordinary means for the security of depositors. The financial soundness of the banks of the country is a matter of public concern; and financial soundness vanishes when a bank loses the confidence of its depositors. Sound public policy, therefore, requires that these quasi public institutions shall so deal with their depositors as to earn and hold their confidence. Nothing, it is thought, could more effectually destroy this confidence, and incidentally im-

pair the public usefulness of banks, than to allow these institutions, in the absence of specific statutory authority for them to do so, and in the absence of suitable regulations in this regard, to appropriate their assets to the securing of a selected few of their depositors.

During the time the Longview bank was in operation, there existed no statute which, either expressly or by necessary implication, authorized any bank to discriminate in favor of a city against other depositors in the matter of pledging assets of the bank as security for deposits. In the absence of this statutory authority, we are of the opinion that the pledge contract in question was forbidden by public policy, and is therefore illegal. Commercial Banking & Trust Company v. Citizens' Trust & Guaranty Company, 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166; Ark.-La. Highway Improvement Dist. v. Taylor, 177 Ark. 440, 6 S. W.(2d) 533; County of Divide v. Baird, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296.

The pledge contract made between the city of Longview and the bank being illegal, it can afford no aid to the city in its suit to foreclose the alleged lien on the bonds. The city's suit for foreclosure fails, not because the bank was not the owner of the bonds, but because the city has shown no legal contract which purports to give it a lien on the bonds. For this reason, no legal injury resulted to the city from the fraudulent representation of the bank official that the bank owned the bonds. No basis for equitable relief to the city is shown. With the illegal contract brushed aside, the city appears in the case merely as a depositor whose rights in the bank's assets are no higher than those of other depositors.

The illegal contract that was made between the city and the bank cannot affect the rights of the interveners. The latter, having established their ownership of some of the bonds which were attempted to be pledged, are entitled to recover them.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals be reversed and set aside, and that judgment be here rendered substantially as follows: (1) Awarding the city a recovery of the amount of its claim, and establishing same as a common claim against the assets of the Longview Bank in the hands of the banking commissioner; (2) awarding to the interveners who are plaintiffs in error here a recovery of their bonds and securities held by the American National Bank of Dallas, Tex.; (3) allowing Coke and Coke of Dallas an attorney's fee of $250 for their services in filing interpleader in behalf of the American National Bank of Dallas, same to be taxed and collected as costs herein; and (5) adjudging against the city all costs in all the courts.

CURETON, C. J.

The judgments of the District Court and Court of Civil Appeals are both reversed, and judgment rendered as recommended by the Commission of Appeals.