PD-1275-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/28/2015 9:54:15 AM
Accepted 12/28/2015 12:49:55 PM
ABEL ACOSTA
CLERK

NO. PD-1275-15

IN THE
TEXAS COURT OF CRIMINAL APPEALS

_____

THE STATE OF TEXAS, Petitioner

v.

TOM BENSON, Respondent

_____

FILED IN
COURT OF CRIMINAL APPEALS

December 28, 2015

ABEL ACOSTA, CLERK

No. 03-15-00121-CR
In the Court of Appeals for the
Third District of Texas at Austin
No. C-1-CV-14-002294
County Court at Law No. 7
Travis County, Texas

_____

**PETITIONER'S MOTION FOR REHEARING**

_____

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

The State of Texas files this Motion for Rehearing, respectfully requesting that the Court reconsider its order refusing the State's petition for discretionary review because articles 22.13(a)(5) and 22.13(b) of the Texas Code of Criminal Procedure constitute an unconstitutional reduction in the liability of the surety and principal to the State for a bond forfeiture in violation of Article III, § 55 of the Texas Constitution.

Relying on articles 22.13(a)(5)(A) and 22.13(b)[1] of the Texas Code of Criminal Procedure, Tom Benson, the surety, asserts that his liability to the State under Chapter 22 of the Code of Criminal Procedure for the forfeiture of a bail bond he made with Brian Whipple, the principal, should be greatly reduced because Mr. Whipple was allegedly incarcerated in Las Vegas within 180 days after he failed to appear in Travis County. This statutory reduction in liability, however, violates Article III, § 55 of the Texas Constitution, which provides:

> The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, except

---

[1] These statutes provide:

(a) The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:

. . .

5. The incarceration of the principal in any jurisdiction in the United States:

(A) in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure to appear in court[.]

(b) A surety exonerated under Subdivision 5, Subsection (a), remains obligated to pay costs of court, any reasonable and necessary costs incurred by a county to secure the return of the principal, and interest accrued on the bond amount from the date of the judgment nisi to the date of the principal's incarceration.

Tex. Code Crim. Proc. articles 22.13(a)(5)(A) & 22.13(b).

delinquent taxes which have been due for a period of at least ten years.

Tex. Const. Art. III, § 55.

The courts have construed this provision to prohibit the Legislature from releasing or diminishing an obligation to the State unless there is consideration for doing so.[2] Over forty years ago, the Texas Supreme Court was faced with the issue of whether another statutory reduction of a surety's liability for a bond forfeiture violated Article III, § 55. *Robinson v. Hill*, 507 S.W.2d 521 (Tex. 1974) (a copy of this opinion is attached to this motion). The statute at issue[3] authorized a court to remit at least fifty percent of the amount paid on a judgment of bond forfeiture where the principal had, **as a result of money spent or information furnished by the surety**, been rearrested and returned to the county within 120 days after the date of final judgment on the bond forfeiture. The Court found that this reduction in liability was supported by consideration (i.e., the principal was arrested as a result of money spent or information furnished by the

---

[2] *See City of Beaumont v. Fertitta*, 415 S.W.2d 902, 906 (Tex. 1967); *State v. City of Austin*, 160 Tex. 348, 331 S.W.2d 737, 742 (1960) ("After the occurrence of events which under the law then existing give rise to an obligation on the part of an individual or corporation to the state, the Legislature has no power to release or diminish that obligation without consideration.")

[3] Tex. Rev. Civ. Stat. art. 2372p-3, § 12(a), which has since been repealed.

surety), and thus, did not violate Article III, § 55. *Robinson v. Hill*, 507 S.W.2d at 526.

Unlike the statute at issue in *Robinson*, article 22.13(a)(5) and article 22.13(b) do not require the surety to engage in any conduct that leads to the arrest of the principal. The Legislature has not required the surety to even look for the principal after the failure to appear, let alone provide any type of assistance to law enforcement in returning the principal to the criminal justice system. Indeed, the surety need not even know about the principal's arrest at the time it occurs to have his or her liability reduced. Absent any requirement that the surety do anything that contributes to the principal's arrest, a reduction of the surety's liability under article 22.13(a)(5) and article 22.13(b) for a fortuitous arrest of the principal is not supported by consideration. Thus, this statutory reduction in the liability of the principal and surety to the State for a bail bond forfeiture is unconstitutional.

In significant contrast to article 22.13(a)(5) and article 22.13(b), the discretionary remittitur provisions in articles 22.16(b) and 22.17(a) require the surety's participation in the principal's arrest before the court can reduce the surety's liability. *McKenna v. State*, 247 S.W.3d 716, 719 (Tex. Crim. App. 2008)

So that the Texas Constitution might be upheld and that the State might be protected from an unconstitutional reduction in a liability owed to it, the State of Texas respectfully requests that this Court grant this motion for rehearing, grant its petition for discretionary review, reverse the decision of the Third Court of Appeals, and affirm the judgment of the trial court.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

By: /s/ Tim Labadie
Assistant Travis County Attorney
State Bar No. 11784853
P.O. Box 1748
Austin, Texas 78767
(512) 854-5864
(512) 854-9316 (fax)
tim.labadie@traviscountytx.gov

Attorneys for the State of Texas, Petitioner

**CERTIFICATE OF COMPLIANCE**

I hereby certify that, pursuant to Tex. R. App. P. 79.2(c), the foregoing Motion for Rehearing is grounded on substantial intervening circumstances or on other significant circumstances that are specified in the motion and that the motion is made in good faith and not for delay.

/s/ Tim Labadie
Tim Labadie

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2015, and in accordance with Texas Rule of Appellate Procedure 9.5, a true and correct copy of the foregoing was emailed to Mr. Tom Benson at tomrbenson@gmail.com.

*/s/ Tim Labadie*
Tim Labadie

507 S.W.2d 521
Supreme Court of Texas.

J. W. ROBINSON et al., Appellants,
v.
John HILL, Attorney General
of Texas et al., Appellees.

No. B—4224.   |   March 13, 1974.
|   Rehearing Denied April 10, 1974.

Class action was brought against officials of Harris County and of state to challenge constitutionality of statute providing for licensing and regulation of bail bondsmen. The District Court No. 55,Harris County, Compton, J., denied plaintiffs' application for a temporary injunction, and plaintiffs appealed. The Supreme Court, Walker, J., held that such statute does not violate constitutional provision that no bill shall contain more than one subject which shall be expressed in its title, that such statute is a general law, and is not an unconstitutional special and local law, and that $500 fee that must accompany the original application for a license and $250 renewal fee are license fees imposed in exercise of police power, and are not occupational taxes.

Affirmed.

West Headnotes (10)

[1]    **Constitutional Law**
        Presumptions and Construction as to Constitutionality
    **Constitutional Law**
        Burden of Proof
    It is to be presumed that the legislature has not acted unreasonably or arbitrarily, and the burden is on one who challenges an act to establish its unconstitutionality.

    51 Cases that cite this headnote

[2]    **Statutes**
        Subjects and titles of statutes
    **Statutes**
        Acts Relating to One or More Subjects;  Single-Subject Rule
    Both constitutional provision that no bill shall contain more than one subject which shall be expressed in the title and questioned statute are to be liberally construed in favor of constitutionality. Vernon's Ann.St.Const. art. 3, § 35.

    19 Cases that cite this headnote

[3]    **Statutes**
        In general;  construction of title
    A statute will not be held unconstitutional, as failing to comply with requirement that no bill shall contain more than one subject which shall be expressed in its title, where its provisions relate, directly, or indirectly, to the same general subject, have a mutual connection, and are not foreign to the subject expressed in the title. Vernon's Ann.St.Const. art. 3, § 35.

**12 Cases that cite this headnote**

**[4]** **Statutes**
🔑 What Constitutes Sufficient or Insufficient Title

**Statutes**
🔑 Comprehensiveness

Constitutional provision that no bill shall contain more than one subject which shall be expressed in its title requires only that the title state the general subject; it need not explain the details. Vernon's Ann.St.Const. art. 3, § 35.

**3 Cases that cite this headnote**

**[5]** **Bail**
🔑 Sureties

**Statutes**
🔑 Trade or business

Statute providing for licensing and regulation of bail bondsmen does not violate constitutional requirement that no bill shall contain more than one subject which shall be expressed in its title. Vernon's Ann.Civ.St. art. 2372p–3; V.A.T.S. Insurance Code, art. 21.14; Vernon's Ann.St.Const. art. 3, § 35.

**3 Cases that cite this headnote**

**[6]** **Statutes**
🔑 General laws compared and distinguished

Primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification it makes and whether the law operates equally on all within the class. Vernon's Ann.St.Const. art. 3, § 56.

**7 Cases that cite this headnote**

**[7]** **Bail**
🔑 Sureties

**Statutes**
🔑 Trade or business

Statute providing for licensing and regulation of bail bondsmen, which may not apply to counties having a population of less than 150,000, does not constitute an unreasonable classification by reason of alleged fact that counties just on either side of population line are similarly situated, or that there are excluded counties constituting part of same metropolitan area as included counties. Vernon's Ann.St.Const. art. 3, § 56; Vernon's Ann.Civ.St. art. 2372p–3, §§ 3, 3(c), 5, 13.

**5 Cases that cite this headnote**

**[8]** **Bail**
🔑 Sureties

**Statutes**
🔑 Trade or business

Statute providing for licensing and regulation of bail bondsmen is a general law, and does not violate Constitution as a special and local

law, even if the statute does not apply to counties having a population of less than 150,000. Vernon's Ann.St.Const. art. 3, § 56; Vernon's Ann.Civ.St. art. 2372p–3, §§ 3, 3(c), 5, 13.

7 Cases that cite this headnote

**[9]    Bail**
    Sureties

$500 original application fee and $250 renewal fee, provided for in statute relating to the licensing of bail bondsmen, are license fees imposed in exercise of police power and are not occupation taxes in contravention of Constitution. Vernon's Ann.Civ.St. arts. 1738a, 2372p–3; Vernon's Ann.St.Const. art. 8, §§ 1, 2.

Cases that cite this headnote

**[10]    States**
    Rights and remedies of state on contracts in general, and debts due state

Statute providing for licensing and regulation of bail bondsmen, insofar as it authorizes the court to remit at least 50% of amount paid on a judgment of bond forfeiture where the principal has, as the result of money spent or information furnished by the surety, been rearrested and returned to the county within 120 days after the date of final judgment on the bond forfeiture,

does not violate constitutional provision prohibiting the legislature from releasing or extinguishing the liability or obligation of any corporation or individual to the state or to any county or municipal corporation. Vernon's Ann.Civ.St. art. 2372p–3, § 12; Vernon's Ann.St.Const. art. 3, § 55.

2 Cases that cite this headnote

**Attorneys and Law Firms**

**\*523**  Heath & Associates, Bob Heath, Houston, for appellants.

John L. Hill, Atty. Gen., Calvin Botley, Asst. Atty. Gen., Austin, Carol S. Vance, Dist. Atty., Joe S. Moss, Asst. Dist. Atty., Houston, for appellees.

**Opinion**

WALKER, Justice.

This is a direct appeal as authorized by Article 1738a, Vernon's Ann.Tex.Civ.St. Suit was filed by J. W. Robinson et al, appellants, as a class action against several officials of Harris County and of the State of Texas, appellees, to challenge the constitutionality of Article 2372p—3, V.A.T.S., which provides for the licensing and regulation of bail bondsmen. The suit was brought on behalf of lawyers, insurance agents and others who had previously written bail bonds to obtain a judgment declaring the statute unconstitutional and enjoining appellees from implementing, administering or enforcing

its provisons. Appellants' application for a temporary injunction having been denied by the trial court, they perfected their appeal to this Court. We affirm.

Article 2372p—3 declares that the business of executing bail bonds is a business affecting the public interest. It further declares that the policy of the State is to provide reasonable regulation to the end that the right of bail be preserved and implemented by just and practical procedures governing the giving or making of bail bond and other security to guarantee appearance of the accused. A county bail bond board is created in each county having a population of $150,000 or more according to the last preceding federal census. The board is authorized to promulgate rules and regulations relative to the making of bail bonds by bondsmen within the county. 'Bondsman' is defined as any person who, for compensation and as many as five times in any 12-month period, deposits cash or securities or executes as surety any bond to assure appearance. Subject to certain exemptions, no person may act as a bondsman unless licensed by the board under the Act. The following are exempted from the license requirements: (1) members of the State Bar who personally execute bonds for persons they actually represent in criminal cases; (2) persons executing bonds in counties having a population of less than 150,000 according to the last preceding federal census; and (3) persons who execute bonds as co-sureties with a licensed bondsman.

An application for an original license, which expires 24 months after the date of its issuance, must be accompanied by a fee of $500.00. The license may be renewed for a period of 12 months upon application and the payment of a $250.00 renewal fee. Upon notice from the board that an original application has been tentatively approved, the applicant is required to deposit $5,000.00 in cash or its equivalent with the county treasurer to be held as a special bond security fund and also to execute in trust to the sheriff a deed to non-exempt real property of the value of at least $10,000.00. The cash deposit and any money realized from the trust may be used to pay any judgments of bail forfeiture for which the licensee is liable and that are not satisfied within 30 days.

 **\*524** A corporation otherwise authorized to act as a surety must meet the same requirements as an individual before being acceptable as a 'personal surety' on a bail bond. Its certificate to do business issued by the State Board of Insurance is not conclusive as to the sufficiency of the security or the solvency of the corporation. Before acting as a surety, moreover, the company is required to file with the county clerk of the county where the bond is to be given a power of attorney designating an agent or agents to execute bail bonds, and any agent so designated may execute bail bonds for his company even though he is not licensed as a local recording agent in accordance with Article 21.14 of the Texas Insurance Code.

 **[1]**  In passing upon the constitutionality of a statute, we begin with a presumption of validity. It is to be presumed that the Legislature has not acted unreasonably or arbitrarily, and the burden is on one who challenges an act to establish its unconstitutionality. Smith v. Craddick, Tex.Sup., 471 S.W.2d 375; Smith v. Davis, Tex.Sup., 426 S.W.2d 827, and authorities there cited. Appellants contend that Article 2372p—3 violates several provisions of the Texas Constitution. They say, in the first place,

that the caption does not comply with the requirement of Art. III, Sec. 35, that no bill shall contain more than one subject which shall be expressed in its title. The statute now in question was adopted by the 63rd Legislature in 1973. Acts 1973, 63rd Leg., p. 1520, ch. 550. The title of the Act reads as follows:

> An Act relating to the licensing and regulation of persons or corporations who engage in the business of executing bail bonds and establishing a County Bail Bond Board in certain counties; providing for the composition, organization and powers, duties, and procedures of the board; providing forms and content of applications for licenses and for fees, deposits and deeds in trust to secure payment of judgments; making certain requirements of corporations acting as sureties; providing for renewal of licenses, renewal fees and identifying number of license; providing procedures for and reasons for refusal to issue or for revocation of licenses; providing for judicial review; providing for remittitur to principal in certain situations; providing special powers and duties of sheriff; providing extra-county authority of licensed bondsmen; prohibiting execution of bonds or advertising as a bondsman by unlicensed persons; prohibiting

certain recommendations or suggestions as to an attorney or particular bondsman; providing penalties; and declaring an emergency.

Appellants insist that this title contains the following four subjects: (1) county bail bond board; (2) special powers and duties of sheriffs; (3) corporations acting as sureties; and (4) amending Article 21.14 of the Insurance Code. We do not agree. The author of the interpretive commentary in Vernon's Annotated Texas Constitution, states that the purpose of Art. III, Sec. 35, is threefold:

First, it is designed to prevent log-rolling legislation, I.e., to prevent the writing of several subjects having no connection with each other in one bill for the purpose of combining various interests in support of the whole.

Second, it prevents surprise or fraud upon legislators by means of provisions in bills of which the titles give no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted.

Third, it permits the people to be fairly apprised of the subjects of legislation under consideration, so that they may have an opportunity of being heard if they so desire.

**[2]** **[3]** Both the constitutional provision and the questioned statute are to be liberally construed in favor of constitutionality. The statute will not be held unconstitutional **\*525** where its provisions relate, directly or indirectly, to the same general subject, have

a mutual connection, and are not foreign to the subject expressed in the title. See Hayman Const. Co. v. American Indem. Co., Tex.Sup., 471 S.W.2d 564; Key Western Life Ins. Co. v. State Bd. of Ins., 163 Tex. 11, 350 S.W.2d 839; Central Ed. Agency v. Independent School Dist. of City of El Paso, 152 Tex. 56, 254 S.W.2d 357; Adams v. San Angelo Waterworks Co., 86 Tex. 485, 25 S.W. 605; Continental Bus System, Inc. v. Carney, Tex.Civ.App., 310 S.W.2d 676 (wr. ref). In this instance the several matters that appellants say are different subjects actually relate to the same general subject, i.e. the licensing and regulation of bail bondsmen, and that general subject is expressed in the title.

 [4]  [5]   There is no merit in appellants' contention that the caption is fatally deficient in that it fails to disclose that the Act's provisions do not apply to the execution of bail bonds in counties having a population of less than 150,000 according to the last preceding federal census. See Tarrant County Water Control and Imp. Dist. No. 1 v. Fowler, 142 Tex. 375, 179 S.W.2d 250; Austin v. Gulf, C. & S.F.R. Co., 45 Tex. 234. See also Pottorff v. El Paso-Hudspeth Counties Road Dist., 5th Cir., 62 F.2d 498. Art. III, Sec. 35, requires only that the title state the general subject; it need not explain the details. State v. Spartan's Industries, Inc., Tex.Sup., 447 S.W.2d 407. In our opinion the statute does not violate Art. III, Sec. 35.

Appellants also contend that the statute is a special and local law and, as such, contravenes Art. III, Sec. 56, of our Constitution in a number of respects. We do not agree. It is not entirely clear to us that the statute has no force or effect whatsoever in counties having a population of less than 150,000. Section 3(c) declares that the provisions of the Act do not apply 'to the execution of bail bonds' in such counties, and it could be argued with considerable force that several provisions of the statute deal with matters other than the execution of bail bonds. See, for example, Section 13. Be that as it may, the statute is not a special and local law even though Section 3(c) means that none of its provisions shall apply in counties having a population of less than 150,000. Although appellants argue to the contrary, the words 'last preceding federal census' in Sections 3 and 5 refer not to the 1970 census but to the last census prior to the time the applicability and effect of the law is to be determined in a particular situation. See City of Ft. Worth v. Bobbitt, 121 Tex. 14, 36 S.W.2d 470, 41 S.W.2d 228. At the present time the statutory provisions covered by the limitation set out in these two sections apply only in eleven counties, but changes in population may bring additional counties under these provisions and exclude others that are now governed thereby.

 [6]  [7]  [8]   Assuming as we do at this point that the statute by its terms does not apply throughout the State, the primary and ultimate test of whether the law is general or special is whether there is a reasonable basis for the classification it makes and whether the law operates equally on all within the class. See Board of Man. of Harris Co. Hosp. Dist. v. Pension Bd., Tex.Sup., 449 S.W.2d 33; Smith v. Davis, Tex.Sup., 426 S.W.2d 827; Rodriguez v. Gonzales, 148 Tex. 537, 227 S.W.2d 791, and authorities there cited. The Legislature in this instance may well have concluded that bail bondsmen in the more populous counties should be regulated and required to secure their obligations because of

the high incidence of crime and the difficulties involved in enforcing bond forfeitures and determining the net worth of persons engaged in the business of writing bonds, but that the same safeguards and procedures were not necessary and would be unduly burdensome in more sparsely populated areas. There is a reasonable basis for the classification made by the law, and the classification is broad enough to include a substantial class. The fact that counties just on either side of the population line are similarly situated, or that **\*526** there are excluded counties constituting part of the same metropolitan area as included counties, does not make the classification unreasonable. Any classification on the basis of population is subject to this complaint, and that circumstance alone is not a sufficient basis for holding the statutory classification unconstitutional. The Legislature has rather broad power to make classifications for legislative purposes, and there is nothing here to suggest that the line drawn is arbitrary or capricious or a mere device used for the purpose of giving a local law the appearance of a general law. See Miller v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000. In our opinion the statute is a general law and does not violate Art. III, Sec. 56, of the Texas Constitution.

[9] Appellants further contend that the $500.00 fee that must accompany an original application for a license and the $250.00 renewal fee are occupation taxes. They insist that as such these fees contravene Art. VIII, Sections 1 and 2, of the Texas Constitution, because no occupation tax has been levied by the State on the business of writing bail bonds. The fees in question are prescribed by a statute that is regulatory in nature. They are presumed

to be license fees, and there is nothing in the present record indicating that they are not. We accoridngly hold that, for purposes of this appeal, the exactions are license fees imposed in the exercise of the police power and are not occupation taxes. See Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488.

As previously indicated, it is our opinion that there is a reasonable basis for the Legislature's regulating and requiring additional security from bondsmen in the more populous counties without making the same requirements with respect to bail bondsmen in the counties having a smaller population. Since the classification is reasonable, the statute does not deny appellants equal protection of the law.

[10] By their point of error No. 7, appellants attack the provisions of Sec. 12 of the Act which authorize the court to remit at least 50 per cent of the amount paid on a judgment of bond forfeiture where the principal has, as a result of money spent or information furnished by the surety, been rearrested and returned to the county within 120 days after the date of final judgment on the bond forfeiture. They say that these provisions violate Art. III, Sec. 55, of the Texas Constitution, which prohibits the Legislature from releasing or extinguishing the liability or obligation of any corporation or individual to the State or to any county or municipal corporation. In our opinion the provisions in question do not contravene Art. III, Sec. 55, because the court is authorized to order the remittitur only when the principal was rearrested as a result of money spent or information furnished by the surety. The remittitur is thus supported by a consideration deemed adequate by the Legislature, and we cannot say it is so inadequate that the provision

for a remittitur is unconstitutional. See City of Beaumont v. Fertitta, Tex.Sup., 415 S.W.2d 902; State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737.

The judgment of the trial court is affirmed.

**All Citations**

507 S.W.2d 521

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.